IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARMEN LYNN OLIGNEY,

                Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[1]

                Defendant.

OPINION AND ORDER

20-cv-707-wmc

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Carmen Lynn Oligney seeks judicial review of a final determination that she was no longer disabled within the meaning of the Social Security Act. An administrative law judge ("ALJ") reached that conclusion on January 24, 2020, as part of a Continuing Disability Review originally finding her no longer disabled on and after June 30, 2017. Oligney contends that remand is warranted because the ALJ: (1) erred in determining Oligney had medically improved on June 30, 2017, without medical proof; and (2) failed to evaluate the reasons for Oligney's lack of treatment. For the reasons that follow, the court rejects both challenges and will affirm the unfavorable decision.

BACKGROUND

**A. Overview**

Plaintiff Oligney has at least a high school education, is able to communicate in

---

[1] Consistent with defense counsel's recent practice of adopting a new caption to reflect Kilolo Kijakazi's appointment as the Acting Commissioner of the Social Security Administration on July 9, 2021, the court has also adjusted the captions in pending cases.

English, and has no past relevant work experiences. In a written opinion issued on September 21, 2005, Oligney was found to be disabled as of October 21, 2001, based on a history of right orbit fracture with chronic pain and a residual functional capacity ("RFC") of less than the full range of sedentary work.

### B. ALJ Decision

ALJ Luke Woltering held an in-person hearing on November 19, 2019, at which Oligney appeared personally and by her counsel Patrick Scharmer. (AR 36.) On January 24, 2020, the ALJ issued his written opinion finding Oligney was not disabled as of June 30, 2017. (AR 26.) In reaching that conclusion, the ALJ used the September 21, 2005 opinion finding Oligeney disabled as the most favorable comparison point decision ("CPD"). (AR 15.) Before then, Oligney had claimed her history of right orbit fracture with chronic pain to have caused "bouts of severe, stabbing pain, flashed of light, shadows, and double vision," as well as "memory loss and anxiety." (AR 19.)

As of the hearing date of November 19, 2019, Oligney was found to have had the following severe impairments: history of right orbit fracture with chronic pain; lumbar and thoracic degenerative disc disease; anxiety disorder; social anxiety disorder; post-traumatic stress disorder; mood disorder, not otherwise specified; obesity; and chronic kidney disease, stage III. (AR 15.) The ALJ also found that none of the previous conditions nor any combination thereof meet or exceed the severity listed in 20 CFR Part 404, Subpart P, Appendix 1 as of June 30, 2017. (*Id.*) This included a 12.04 Paragraph B analysis to determine Oligney's level of cognitive impairment for later use in determining the RFC. (*Id*. at 17.) The ALJ further find the Paragraph B criteria satisfied as there were not two

areas of "marked" limitations or one area of "extreme" limitation. (*Id*. at 18.) Instead, the ALJ found that Oligney had (1) a mild limitation in understanding, remembering, or applying information; and (2) moderate limitations in interacting with others, concentrating, persisting, maintaining pace, and adapting and managing oneself. (*Id*. at 17-18.)

Finally, based on his finding that medical improvement had occurred by June 30, 2017, and guidance from a vocational expert ("VE"), the ALJ made an RFC determination that Oligney could perform light work with restrictions. (AR 18-25.) Specifically, the ALJ found Claimant Oligney had "the residual functional capacity to perform light level work," with the following restrictions:

> [S]he cannot climb ladders, ropes, or scaffolds. The claimant occasionally can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot work around hazards, such as unprotected heights and exposed moving, mechanical parts. The claimant can understand, remember, and carry out simple work instructions. She can sustain the concentration to perform simple tasks. The claimant can adapt to routine changes in the work setting. She can interact occasionally and superficially with coworkers and supervisors performing job duties that do not involve tandem tasks or teamwork. She should not have to interact with the public or work in the vicinity of the public.

In reading this RFC, the ALJ also found that Oligney's anxiety was not as severe as alleged given: (1) the findings of medical experts who examined Oligney; (2) the fact that she did not take medication; and (3) the fact that Oligney refused any treatment or psychotherapy for her claimed anxiety at any point. (*Id*. at 18) Regarding facial pain and headaches, the ALJ found it, too, was not as severe as alleged primarily due to the fact that Oligney herself had continuously denied having facial pain, headaches, or vision changes (other than floaters) in her medical records since March of 2017. (*Id*. at 20) The ALJ also

3

noted that when Oligney did complain of facial pain, it was related to untreated dental issues later treated by her dentist. (*Id*.) The ALJ found particularly telling that Oligney had not sought treatment for her pain, and testified that while referred to a pain clinic by her doctor, she decided to manage it by herself instead. (AR 19.) For all these reasons, the ALJ found that medical records and evidence of lack of treatment contradicted Oligney's subjective assertions at the hearing regarding the frequency and intensity of her pain.

In light of this record, the ALJ found that Oligney's RFC had increased markedly since the September 2005 CPD, resulting in an RFC that would allow Oligney to work a significant number of jobs in the economy. (AR 25.) As a result, Oligney's disability benefits were terminated effective June 30, 2017.

## OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d

4

334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *Id.*, and ensure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises two challenges to the Commissioner's final decision: (1) the ALJ erred in determining Oligney had medically improved on June 30, 2017, without medical proof; and (2) the ALJ failed to evaluate the reasons for Oligney's lack of treatment. The court explains its rejection of each challenge separately below.

## I. Medical Improvement

Social Security Administration regulations define medical improvement as "any decrease in the medical severity of your impairment(s) . . . present at the time of the most recent favorable medical decision." 20 C.F.R. § 404.1594(b)(1). In particular, there must be "improvement in the symptoms, signs, and/or laboratory findings associated with [a claimant's] impairment(s)." *Id*. Oligney argues that this regulation should be *interpreted* to mean that a "[l]ack of treatment is insufficient to show improvement in a disabling condition." (Pl.'s Reply (dkt. #17) 9.) However, there is no statutory or precedential support for this: as just noted, the regulation provides that improvement can be in "symptoms, signs, and/or laboratory findings," and makes no mention of the impairment being attributed to "treatment" of any kind, certainly leaving room for healing over time as a basis for decreasing impairments. 20 C.F.R. § 404.1594(b)(1). Given the nature of improvement, this would include evidence such as a reduction in signs and symptoms, which could in fact be shown through a *decrease* in treatment or even self-reporting of symptoms.

5

Moreover, Oligney fails to acknowledge that the ALJ *did* rely on medical evidence *beyond* just a lack of treatment in crafting his opinion. Specifically, the ALJ found that Oligney had often failed to mention headaches or facial pain at medical appointments. (AR 16.) Even further, Oligney herself *affirmatively denied* headaches and facial pain on many occasions.

> During a March 2017 examination, the claimant denied any headaches (17F/5). The claimant denied experiencing headaches (18F/15). There was no mention of facial pain (18F/15). A March 2017 optometry examination did not identify any reports of vision flare-ups, facial pain, or headaches, other than experiencing floaters (19F/3). In April 2017, the claimant again did not report any facial pain or headaches (18F/23). An August 2015 treatment record noted claimant again denying she experienced any headaches (18F/15). There was no mention of facial pain (18F/15). In December 2017, the claimant was treated for a tooth infection, dental decay, and missing teeth, all of which could have possibly caused facial pain (17F/1-2), rather than her history of orbital facture. Until March 2019, the claimant did not allege any pain in her right eye area.

(AR 20.)

Similarly, the ALJ expressly relied heartily on the claimant's own frequent denials of the very symptoms for which she was receiving disability. In particular, while Oligney claimed frequent and debilitating headaches and facial pain in her subjective testimony at the hearing, the ALJ found substantial evidence in the medical record to find her pain was neither as frequent nor as severe as she claimed. (AR 19.) Thus, the ALJ did not simply rely on lack of treatment as Oligney alleges; rather, he pointed to a combination of Oligney's denial of symptoms, "routine treatment, lack of medical findings, and relatively benign medical examinations" in support of his finding of medical improvement. (AR 20.)

6

So, too, this combination of factors is more than sufficient for this court to uphold the ALJ's finding of improvement in the symptoms and signs of Oligney's condition; at minimum, the ALJ built a logical bridge between the evidence and his conclusion, which is all that is required to uphold his rulings.

Oligney does advance one last argument in her reply, asserting that the ALJ failed to adequately weigh the opinions of state agency physicians and psychologists. (Pl.'s Reply (dkt. #17) 3.) Specifically, she points to the fact that the ALJ found these opinions to be "inconsistent with the record of evidence," arguing that this finding should have resulted in the ALJ discounting these opinions. (AR 24.) As an initial matter, since this argument was not raised until reply, it is waived. *See e.g., Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019). However, the argument also fails for two more reasons. First, as noted before, the ALJ relied on a variety of records from Oligney's own treating physicians noting no reported symptoms. (AR 20.) Marshalling substantial evidence outside of the agency opinions to support his alternate view of the record is not the same thing as ignoring or failing to weigh the opinions of the state agency physicians. Thus, even if the court were to find the ALJ's analysis of the opinions improper, which the court does not, there is still a well-articulated proper basis for the ALJ's decision. Second, while the ALJ did find the state agency reports inconsistent with the record, he did so in *favor* of Oligney. The state physicians actually found that Oligney could work *nearly unrestricted* and they found only minor psychological and physical impairments. (AR 24.) If anything, the ALJ decided to give more credit to Oligney's subjective complaints in his testimony than that suggested by those physicians. (AR 20.) At minimum, plaintiff fails to develop any argument as to why

7

this purported error harmed her case.

**II. Lack of Treatment**

As a separate basis to remand, Oligney criticizes the ALJ's supposed impermissible reliance on her lack of treatment without adequately examining the reasons for it. While reliance on a lack of treatment may be improper, the record shows that the ALJ both noted *and* discussed the reasons for her lack of treatment, and there was substantial evidence supporting this opinion. To begin, SSR 16-3p states that the agency will "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment." SSR 16-3p. In particular, the agency is to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." *Id*. Some examples of acceptable reasons for lack of treatment include a claimant reaching a plateau with symptom management, changing insurance, or deciding not to take medication because the side effects are worse than the condition. *Id*. At the same time, "assessing credibility, infrequent treatment or failure to follow a treatment plan can *support* an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008) (emphasis added) (citing SSR 96–7p).

Here, Oligney specifically testified at her benefits hearing about her years without mental health treatment, claiming that she was scared to get treatment for her anxiety and didn't want to take medication or talk about it with a psychologist. (AR 45.) As to her chronic pain, she stated that her doctor referred her to a pain clinic but she "just didn't

want to go there"; she "go[es] in for my annual [physical exams] . . . unless I have a problem." (AR 45.) The ALJ noted all of this in his opinion. (AR 19, 22.) [2]

While the ALJ can and should give due consideration to reasons why a claimant has not gotten treatment, the ALJ in this case properly relied on substantial evidence. In contrast, Oligney refers the court to *Brown v. Saul*, 799 F. App'x 915 (7th Cir. 2020), for the position that lack of treatment may be excused for good reason, but facts in that this case is actually demonstrate why the ALJ's performance here must be upheld. Unlike here, *Brown* concerns a claimant who failed to receive treatment for many months due to a change in his insurance. *Id*. at 917. As a result, the claimant had to be referred to new specialists that took his new insurance, then make appointments, which led to an extended period where he was not receiving active treatment. *Id*. In contrast to the ALJ's opinion, the Seventh Circuit found that "[t]he treatment gap . . . coincides with Brown's move to public assistance insurance in March 2015 and establishment of treatment in January 2016 with a new primary-care physician." *Id*. at 921. Much of the other favorable case law regarding possible excuses for a lack of treatment similarly deals with insurance changes or lack of insurance. *E.g.*, *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008); *Jones v. Colvin*, No. 15 C 11310, 2016 WL 4798956 (N.D. Ill. Sept. 14, 2016); *Potysman v. Colvin*, 218 F. Supp. 3d 782 (N.D. Ind. 2016). However, Oligney was able to get treatment, *and* she expressly declined to try treatment options offered to her by her physicians. (AR 45.)

---

[2] "The claimant reportedly has not had much treatment during the last few years because of pre-existing conditions. She testified that she was referred to a pain clinic, but she is trying to manage it herself. Her primary care physician offered to refer her out, but claimant does not want that. She would rather handle it herself. The claimant reportedly is scared to discuss her past, so she avoids any anxiety treatment. The claimant has not taken any medications for anxiety." (AR 19.)

Certainly, the ALJ could reasonably conclude that Oligney stated explanations for avoiding treatment for her chronic pain and anxiety suggest neither is as severe as portrayed.

As previously noted, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Instead, the court must review the administrative record to determine whether there is a basis in the record to support the ALJ's findings of fact, and whether he has articulated a logical bridge between those facts and the conclusion of law.  While reasonable minds may differ as to the extent that fear or reticence may excuse a lack of treatment on Oligney's part, the ALJ has sufficiently explained his reasoning and properly relied on the underlying medical evidence.  More specifically, the ALJ plainly and thoroughly addressed the reasons for Oligney's lack of treatment for chronic pain and anxiety before finding against her.  (AR 19.)  As such, this court must defer to those conclusions.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that plaintiff Carmen Oligney is no longer eligible for social security disability benefits as of June 30, 2017, is AFFIRMED.

2) The clerk's office is directed to enter judgment in defendant's favor.

Entered this 25th day of August, 2021.

BY THE COURT:

   s/ William M. Conley
WILLIAM M. CONLEY
District Judge